# Case No.: 25-11267

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

CYNDI FISCHER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JESSE FISCHER, DECEASED,

**PLAINTIFF - APPELLANT**

v.

ROBERT PHILLIPS, INDIVIDUALLY; CITY OF ARLINGTON, TEXAS,

**DEFENDANTS - APPELLEES**

On Direct Appeal from the trial court in cause number 4:23-cv-1069-P, United States Northern District of Texas, Ft. Worth Division.

# APPELLANT'S OPENING BRIEF

**Breanta Boss**
**James P. Roberts**
Palmer Perlstein
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Phone: 214-987-4100
Facsimile: 214-922-9900
Email:breanta@palmerperlstein.com
james@palmerperlstein.com
**Counsel for Appellant**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Cyndi Fischer, Individually**, **And on behalf of the Estate of Jesse Fischer** (Plaintiff/Appellant);

2. **James Roberts**, Palmer Perlstein, 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellant at trial and on appeal);

3. **Breanta Boss**, Palmer Perlstein, 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellant at trial and on appeal);

4. **Scott Palmer**, Palmer Perlstein 15455 Dallas Parkway, Suite 540, Addison, Texas 75001 (Attorney for Appellant at trial and on appeal);

5. **Robert Phillips**, (Defendant/Appellee);

6. **City of Arlington, Texas**, (Defendant/Appellee);

7. **James T. Jeffrey, Jr.**, Law Offices of Jim Jeffrey, 3200 W. Arkansas Lane, Arlington, Texas 76016 (Attorney for Defendant/Appellee Robert Phillips, at trial and on appeal);

8. **Scott K. Jeffrey**, Law Offices of Jim Jeffrey, 3200 W. Arkansas Lane, Arlington, Texas 76016 (Attorney for Defendant/Appellee Robert Phillips, at trial and on appeal);

9. **Alexander J. Lindvall,** City of Arlington, Texas Attorney's Office, P.O. Box 90231, MS 63-0300, Arlington, Texas 76004 (Attorney for Defendant/Appellee City of Arlington, at trial and on appeal);

10. **Joshua A. Skinner,** City of Arlington, Texas Attorney's Office, P.O. Box 90231, MS 63-0300, Arlington, Texas 76004 (Attorney for Defendant/Appellee City of Arlington, at trial and on appeal);

11. **Cynthia Withers,** City of Arlington, Texas Attorney's Office, P.O. Box 90231, MS 63-0300, Arlington, Texas 76004 (Attorney for Defendant/Appellee City of Arlington, at trial and on appeal);

12. **The Honorable Mark T. Pittman** (United States District Court Judge for trial);

*/s/ James P. Roberts*
James P. Roberts

**Attorney Of Record For Cyndi Fischer, Individually, And on behalf of the Estate of Jesse Fischer**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. As this Court has long held "[c]laims of excessive force are fact-intensive" and "depend[] on the facts and circumstances of each particular case." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). Here, the facts require a thorough analysis. Oral argument will help develop the factual details in the record before this Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ 2
STATEMENT REGARDING ORAL ARGUMENT ........ 4
TABLE OF CONTENTS ........ 5
Contents ........ 5
TABLE OF AUTHORITIES ........ 6
STATEMENT OF JURISDICTION ........ 10
STATEMENT OF ISSUES PRESENTED FOR REVIEW ........ 11
STATEMENT OF THE CASE ........ 12
A. SUMMARY OF THE ARGUMENT ........ 14
B. Standard of Review ........ 16
C. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ........ 16
D. Qualified Immunity ........ 17
E. Constitutional Violation for Excessive Deadly Force ........ 18
i. Appellant's allegations are supported by video and dispatch radio transmission ........ 18
ii. Appellant sufficiently alleged Phillips violated Fischer's Fourth Amendment right to be free from excessive deadly force ........ 19
F. Phillips is not entitled to qualified immunity ........ 23
G. The Wrongful Death and Survival Action should not be dismissed as Appellant has stated a claim for relief under the Fourth Amendment ........ 36
CONCLUSION & PRAYER ........ 36
CERTIFICATE OF COMPLIANCE ........ 39

# TABLE OF AUTHORITIES

*Aguirre v. City of San Antonio*,
995 F.3d 395, 413 (5th Cir. 2021) ............................................. 15, 20, 23, 35, 36

*Amador v. Vasquez*,
961 F.3d 721, 730 (5th Cir. 2020) ............................................................. 35, 36

*Anderson v. Creighton*,
483 U.S. 635, 640 (1987).........................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009).........................................................................17

*Barnes v. Felix*,
605 U.S. 73, 80 (2025).............................................................................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)..................................................................... 16, 17

*Brosseau v. Haugen*,
543 U.S. 194 (2004)......................................................................... 30, 32, 33

*Cole v. Carson*,
935 F.3d 444, 453 (5th Cir. 2019) ............................................................. 20, 25

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496, 498 (5th Cir. 2000) ..................................................................16

*Darden v. City of Fort Worth, Texas*,
880 F.3d 722, 733 (5th Cir. 2018) ..................................................................34

*De La Paz v. Coy*,
786 F.3d 367, 371 (5th Cir. 2015) ..................................................................16

*Deville v. Marcantel*,
567 F.3d 156, 167 (5th Cir. 2009) .......................................................................25

*Edmond v. City of New Orleans*,
20 F.3d 1170, 1170 (5th Cir. 1994) ............................................................... passim

*Fisher v. Moore*,
73 F.4th 367, 371 (5th Cir. 2023) .........................................................................16

*Flores v. City of Palacios*,
381 F.3d 391, 396 (5th Cir. 2004) .......................................................................20

*Fraire v. City of Arlington*,
957 F.2d 1268, 1275 (5th Cir. 1992) ............................................................ 30, 31

*Graham v. Connor*,
490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) .........................20

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305, 312 (5th Cir. 2002) .......................................................................17

*Gutierrez v. City of San Antonio*,
139 F.3d 441, 446 (5th Cir. 1998) ................................................................. passim

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982)......................................................................................17

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) ......................................................................... 30, 31

*Hope v. Pelzer*
536 U.S. 739, 741 (2002)............................................................................... 34, 35

*Lytle v. Bexar Cty., Tex.*,

560 F.3d 404, 417 (5th Cir. 2009) ................................................... 15, 24, 35, 36

*Mason v. Lafayette City-Par. Consol. Gov't*,
806 F.3d 268, 277 (5th Cir. 2015) .................................................................34

*Molina v. Brady*,
No. 4:24-CV-00593-O, 2025 WL 1019078, at *3 (N.D. Tex. Apr. 4, 2025) 30, 33

*Newman v. Guedry*,
703 F.3d 757, 763 (5th Cir. 2012) ........................................................... 4, 25

*Plumhoff v. Rickard*,
572 U.S. 765, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) ...................................29

*Poole v. City of Shreveport*,
13 F.4th 420 (5th Cir. 2021) ........................................................................ 20, 25

*Reyes v. Bridgewater*,
362 Fed. App'x at 409 (5th Cir. 2010) ..........................................................24

*Roque v. Harvel*,
993 F.3d 325, 335 (5th Cir. 2021) ........................................................... 33, 34

*Smith v. City of Killeen, Texas*, No.
6:16-CV-323-RP-JCM, 2018 WL 1199949, at *6 (W.D. Tex. Mar. 8, 2018)....26, 27, 28, 36

*Sonnier v. State Farm Mut. Auto. Ins. Colo.*,
509 F.3d 673, 675 (5th Cir. 2007) .................................................................17

*Tennessee v. Garner*,
471 U.S. 1, 11 (1985)........................................................................... passim

*Tolan v. Cotton*,
572 U.S. 650, 655-56, (2014) .......................................................................18

**Rules**

Federal Rule 12(b)(6)……………………………………………………16, 17

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

CYNDI FISCHER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JESSE FISCHER, DECEASED,
**PLAINTIFF - APPELLANT**
**v.**
ROBERT PHILLIPS, INDIVIDUALLY; CITY OF ARLINGTON, TEXAS,
**DEFENDANTS - APPELLEES**

---

## STATEMENT OF JURISDICTION

1. The jurisdiction of the United States District Court for the Northern District of Texas was founded upon 18 U.S.C. § 3231.
2. The jurisdiction of the United States Court of Appeals for the Fifth Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and is based upon the following particulars:

   I. Final Judgment: **October 30, 2025**. ROA 289.

   II. Filing of notice of appeal: **November 13, 2025**. This notice of appeal was timely. FED. R. APP. P. 4(b)(2). ROA.290-291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

FIRST ISSUE: Whether Appellant sufficiently pleaded facts demonstrating Appellee Officer Phillips lacked probable cause to believe Jesse Fischer posed a threat of serious physical harm to Phillips or others at the time Phillips used excessive and objectively unreasonable deadly force in violation of the Fourth Amendment, when he fatally shot Fischer when Fischer was not suspected of a violent crime, had not committed any reckless or dangerous driving, did not threaten or assault anyone, and Fischer was driving slowly to the side and away from Phillips when Phillips fired his weapon. Did the District Court err in granting Phillips' motion to dismiss?

SECOND ISSUE: Whether Appellee Phillips is entitled to qualified immunity when, at the time he used deadly force, Phillips lacked probable cause to believe Fischer posed a threat of serious physical harm to Phillips or others as Fischer attempted to avoid Phillps by slowing driving to the side and away from him, had not committed any reckless or dangerous driving, was not suspected of a violent crime, and had not threatened or assaulted Phillips or any other person. Did the District Court err in granting Phillips' motion to dismiss?

THIRD ISSUE: Whether the wrongful death and survival actions should be dismissed when they are dependent on Appellant adequately pleading a constitutional violation. Did the District Court err in granting Phillips' motion to dismiss?

## STATEMENT OF THE CASE

On October 20, 2021, Defendant-Appellee Robert Phillips, acting in his capacity as a law enforcement officer with the Arlington Police Department, fatally shot Jesse Fischer ("Fischer"), when Phillips lacked probable cause to believe Fischer was presenting a threat of serious physical harm during a slow speed vehicle pursuit. ROA.10. In the moments leading up to the shooting, Fischer initiated a U-turn, all the while driving approximately five miles per hour, and attempted to leave a cul-de-sac which had no civilians present or in harm's way. ROA.13-17. Phillips stopped his SUV in the middle of the road at the exit of the cul-de-sac, exited his vehicle, and unholstered his weapon. ROA.14.

Phillips nor anyone else was in the path of Fischer's vehicle or otherwise in danger when Phillips fired his weapon six times into the driver's side windshield of Fischer's vehicle, fatally wounding him. ROA.14-19. <u>Still shots taken from Phillips' body camera and another officer's dash camera footage show Fischer driving slowly (about five miles per hour) staying to the side of Phillips. ROA 15-16.</u> At no time did Fischer rev his engine, accelerate his vehicle, or turn his steering wheel toward Phillips or any other person. ROA.16.

Photographs of the bullet holes in Fischer's windshield show Phillips' shots came from the side where Phillips was standing at the time of the shooting, rather than from directly in front of Fischer's vehicle. ROA.17. Moreover, Phillips never

gave any commands for Fischer to stop his vehicle before Phillips discharged his firearm nor did Phillips warn he would shoot if Fischer did not stop. ROA.17. Appellant plausibly pleaded Fischer had done nothing to cause any reasonable officer to believe Fischer was a danger to Phillips or any other person immediately prior to and at the moment Phillips shot Fischer. ROA.18.

Fischer was not suspected of a violent crime. ROA.10. On the day of the incident police responded to a 911 call reporting a man slumped in his vehicle. ROA.10. Upon arrival the initial responding officer spoke with Fischer and asked him to open his door so he could be checked out. ROA.10.

Fischer started the ignition and asked if he was under arrest. ROA.10. The officer instructed Fischer to turn off the car and not move it. ROA.10. When the officer asked Fischer to stay, he began driving at a slow rate of speed. ROA.10.

Fischer drove cautiously throughout the slow speed vehicle pursuit, never recklessly or dangerously, and he did not endanger other vehicles or pedestrians. ROA.10-19. Body camera, dash camera, and radio transmission to dispatch demonstrate that Fischer obeyed traffic signals such as stop signs and a red light, drove slowly (around 20 miles per hour), did not drive in opposite lanes of traffic or all over the road, and avoided collisions. ROA 10-19. Further, at no point did Fischer threaten any person either verbally or physically, at no point did Fischer brandish a

weapon or state he had a weapon, and no weapon was found on Fischer after the shooting. ROA.15.

Phillips was fired from the Arlington Police Department two days after killing Fischer and later indicted on a first-degree felony murder charge by a Tarrant County grand jury. ROA.18. Fort Worth Police Chief Al Jones addressed the shooting and Officer Phillips' termination, stating, "The only time that you should be able to use deadly force is if you are protecting yourself or someone else. In this case, I just didn't get that." ROA.18.

Appellant, individually and on behalf her son Jesse Fischer's estate, filed suit alleging Phillips used excessive deadly force against Fischer in violation of Fischer's Fourth Amendment rights. ROA.7-40. Appellant also asserts claims for wrongful death and a survival action. ROA.7-40. Additionally, Appellant sued Appellee City of Arlington, Texas alleging the City violated the Fourth Amendment by failing to train Phillips on the proper use of deadly force and de-escalation techniques. ROA.7-40. The District Court granted Phillips' motion to dismiss on the basis of qualified immunity as well as the City's motion to dismiss. ROA.270-289. Appellant files this appeal only as to the claims against Appellee Phillips.

## A. SUMMARY OF THE ARGUMENT

The District Court erred in granting Appellee Phillips' motion to dismiss as Appellant sufficiently pleaded Phillips used excessive and unreasonable deadly

force in violation of the Fourth Amendment, when he fatally shot Fischer during a slow-moving vehicle pursuit. ROA.10-25. It is clearly established that deadly force is unreasonable "where the officer does not have 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others.' "*Aguirre v. City of San Antonio*, 995 F.3d 395, 413 (5th Cir. 2021); citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (also stating "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead.")). Additionally, it is clearly established that it is unreasonable for a police officer to use deadly force by way of a gun against a fleeing felon in a vehicle who does not pose a sufficient threat of harm to the officer or others. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009).

Here, Appellant pleaded facts demonstrating Phillips lacked probable cause to believe Fischer posed a threat of serious physical harm either to Phillips or others immediately prior to and at the time when Phillips fatally shot Fischer. ROA.10-25. Fischer was slowly driving to the side and around Phillips (approximately five miles per hour), had not brandished a weapon, was not suspected of a violent crime, and had not threatened anyone either verbally or physically. ROA.10-19. Fischer did not rev his engine, accelerate toward Phillips or turn his vehicle toward anyone. ROA.16. Throughout the pursuit, Fischer did not drive recklessly or dangerously: he

drove under the speed limit (approximately 20 miles per hour), obeyed stop signs, and traffic lights, drove in the proper lane of travel, and did not strike any vehicles or cause any collisions. ROA.10-19.

Viewed in the light most favorable to the Plaintiff and accepting all well-pleaded facts as true, these allegations show a clear violation of established law, under the Fourth Amendment, thereby defeating Phillips' claims of qualified immunity. Thus, the District Court's dismissal was improper. The District Court also erred when it dismissed the wrongful death and survival action claims since Appellant sufficiently alleged a constitutional violation.

**B. Standard of Review**

This Court reviews de novo this interlocutory appeal from the district court's denial of qualified immunity. *Fisher v. Moore*, 73 F.4th 367, 371 (5th Cir. 2023). "On appeal from a motion to dismiss, this court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff." *Id.*; quoting *De La Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015).

**C. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion is typically disfavored and rarely granted. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the plausibility test

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Colo.*, 509 F.3d 673, 675 (5th Cir. 2007). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

**D. Qualified Immunity**

Qualified immunity shields officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises qualified immunity, the court must decide: (1) whether the facts, <u>taken in the light most favorable to the plaintiff</u>, show the officer's conduct violated a constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct so that a reasonable

official in the defendant's situation would have understood that his conduct violated that right. *Tolan v. Cotton*, 572 U.S. 650, 655-56, (2014). Courts must view the facts and draw reasonable inferences in favor of the non-movant. *Tolan*, 572 U.S. at 657. A right is "clearly established" when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Anderson*, 483 U.S. at 641, the Court held that the relevant question is whether a reasonable officer or public official could have believed that his conduct was lawful, given clearly established law and the information possessed by him. To preclude qualified immunity, it is unnecessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson,* 483 U.S. at 640.

## E. Constitutional Violation for Excessive Deadly Force

i. <u>Appellant's allegations are supported by video and dispatch radio transmission</u>

**Body camera footage and dashboard footage supports Appellant's allegations that Fischer did not pose a threat of serious physical harm to Appellee Phillips or any other person. ROA.11-17**. The Complaint included still-shots taken from the perspective of Phillips' body worn camera and a female officer's dash camera capturing Fischer driving slowly (approximately five miles

per hour) to the side and around Phillips when Phillips shot Fischer. ROA.15-17. Additionally, the Complaint included pictures taken of Fischer's windshield which depict bullet entry points coming from the side where Phillips was positioned rather than from directly in front of Fischer's vehicle. ROA.17.

The Complaint also contained still-shots showing that Fischer was driving neither recklessly nor dangerously: these show Fischer driving below the speed limit (approximately twenty miles per hour), stopping at stop signs, stopping at a red light until it turned green, driving in the proper lane of travel, and avoiding collisions with motorists and pedestrians. ROA.11-14. During the pursuit, an initial responding officer, who was driving in her vehicle behind Phillips, relayed to dispatch that, "He's stopping at all the stop signs, going about twenty miles per hour." ROA.13.

Accordingly, video and dispatch radio transmission supports Appellant's allegations that Fischer did not pose a threat of serious physical harm to any officer or other person immediately prior to and at the time Phillips shot him, as Fischer was driving roughly five miles per hour, attempting to exit the cul-de-sac, and was not driving at Phillips but instead was attempting to drive slowly around Phillips. ROA.11-18. Furthermore, video and dispatch radio transmission corroborate Fischer had not demonstrated any level of violence or danger toward the public throughout the entire slow speed pursuit. ROA.11-18.

ii. Appellant sufficiently alleged Phillips violated Fischer's Fourth Amendment right to be free from excessive deadly force.

"To prevail on an excessive-force claim, the plaintiff must show (1) an injury, (2) that resulted directly from an officer's use of force, and (3) that the force used was 'objectively unreasonable.'" *Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). Appellant alleges Fischer died as a direct result of being shot by Phillips satisfying the first prong of the excessive force claim. ROA.10.

By October 20, 2021, it was clearly established that "the use of deadly force violates the Fourth Amendment unless the officer[s] [have] probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others." *Garner*, 471 U.S. at 11. Additionally, under *Graham*, the reasonableness of a police officer's use of force is evaluated based on the facts and circumstances of each case including the severity of the offense, the threat posed by the suspect, and whether the suspect is actively resisting or attempting to evade arrest. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This Court has held that *Tennessee v. Garner* mandates that, whenever feasible, officer must issue a warning before using deadly force, which is a "critical component of risk assessment and escalation." *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), as revised (Aug. 21, 2019); *see also Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021)).

Here, Appellant plausibly alleged facts demonstrating Phillips lacked probable cause to believe Fischer posed a threat of serious physical harm either to Phillips or to others immediately prior to and at the time Phillips used deadly force. ROA.11-18. Further, Phillips failed to issue any warnings before using deadly force. ROA.17.

Fischer was not suspected of a violent crime. ROA.10. On the day of the incident police responded to a 911 call reporting a man slumped in his vehicle. ROA.10. Upon arrival the initial responding officer spoke with Fischer and asked him to open his door so he could be checked out. ROA.10.

Fischer started the ignition and asked if he was under arrest. ROA.10. The officer instructed Fischer to turn off the car and not move it. ROA.10. When the officer asked Fischer to stay, he began driving at a slow rate of speed. ROA.10.

At no time did Fischer drive recklessly, violently, or in a threatening or dangerous manner or otherwise endanger the public. ROA.10-14. Fischer avoided collisions like when he safely maneuvered around a parked firetruck when leaving the initial stop, obeyed traffic signals like stop signs and a red light and drove at slow speeds (approximately 20 miles per hour). ROA 10-18. Fischer's cautious driving is supported by the initial responding officer, who was driving in her vehicle behind Phillips, relaying to dispatch that, "He's [Fischer] stopping at all the stop signs, going about twenty miles per hour." ROA.13.

Despite this, Phillips incorrectly relayed to dispatch that, “He’s all over the road. On the sidewalk. Going to be in pursuit possible DWI.” However, at the time Phillips told dispatch that Fischer was all over the road on the sidewalk Fischer had not driven all over the road nor on the sidewalk as is depicted in still shots of Phillips’ dash camera video included in the Original Complaint. ROA.11. Further, Phillips fabricated that Fischer was driving in opposite lanes of traffic. However, during the length of the pursuit, Fischer did not drive in opposite lanes of traffic as confirmed by video and dispatch radio transmission. ROA.11-18.

Appellant sufficiently pleaded that at no point did Fischer threaten any person either verbally or physically, at no point did Fischer brandish a weapon or state he had a weapon, and no weapon was found on Fischer after the shooting. ROA.15. Phillips claims that Fischer made a threat when he stated, “This is not going to end well for you either.” However, it appears Fischer was responding to what Phillips had just said—“This is not going to end well for you” –by asking, “This is not going to end well for me? ROA.176, Phillips BWC 1:55-2:05. Accordingly, Fischer never threatened Phillips. ROA.12. And, prior to the events in the cul-de-sac Phillips did not react in any way as if he had been threatened during the period of time when Fischer stopped at a red traffic light. ROA.176, Phillips BWC 01:10-2:50.

Noone was in the path of Fischer's vehicle or otherwise in danger when Phillips fired his weapon at Fischer: this is supported by Fischer attempting to navigate out of the cul-de-sac driving approximately five miles per hour to the side and around Phillips and bullet holes coming from off to the side where Phillips was positioned and not directly in front of Fischer's vehicle. ROA.14-17. Further, Fischer did not rev his engine, accelerate toward Phillips, or turn his vehicle toward anyone immediately prior to and at the time of Phillips shooting Fischer. ROA.16.

Accordingly, when taking the facts pleaded in the Original Complaint – and all still shots of video incorporated into the complaint as well as all reasonable inferences from those facts – in the light most favorable to Plaintiff, Phillips did not have "probable cause to believe that [Fischer] pose[d] a threat of serious physical harm, either to the officer[s] or to others." ROA.11-18. *Aguirre,* 995 F.3d at 412-13; citing *Gutierrez*, 139 F.3d at 446; quoting *Garner*, 471 U.S. at 11. Thus, Phillips's use of deadly force was excessive, objectively unreasonable, and a violation of Fischer's rights under the Fourth Amendment to the United States Constitution. *Id*.

### F. Phillips is not entitled to qualified immunity

By October 20, 2021, the law was clearly established that it would violate the constitution when Phillips used deadly force against Fischer, when Phillips lacked probable cause to believe Fischer presented a threat of serious physical harm to Phillips or any other person. *Aguirre*, 995 F.3d at 412-13; citing *Gutierrez,* 139 F.3d

at 446; quoting *Garner*, 471 U.S. at 11. Fischer was slowly driving to the side and around Phillips (approximately five miles per hour), had not brandished a weapon, was not suspected of a violent crime, and had not threatened anyone either verbally or physically. ROA.10-19. Fischer did not rev his engine, accelerate toward Phillips or turn his vehicle toward anyone. ROA.16. Throughout the pursuit, Fischer did not drive recklessly or dangerously: he drove under the speed limit (approximately 20 miles per hour), obeyed stop signs, and traffic lights, drove in the proper lane of travel, did not strike any vehicles or cause any collisions. ROA.10-19.

The Fourth Amendment right to be free from excessive, deadly force has been clearly established since at least 1985: "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11. The rule has been clarified more specifically in this Circuit, since at least 2009:

> It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others. This holds as both a general matter, and in the more specific context of shooting a suspect fleeing in a motor vehicle. The right in question was therefore clearly established on February 28, 2006, and this is sufficient to affirmatively answer the qualified immunity question of our inquiry.

*Lytle*, 560 F.3d at 417-18; *see also Reyes v. Bridgewater*, 362 Fed. App'x at 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.")). Further, although officers may need to use "physical force ... to effectuate [a] suspect's compliance"

when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

This Court has held that *Tennessee v. Garner* mandates that, whenever feasible, officer must issue a warning before using deadly force, which is a "critical component of risk assessment and escalation." *see Cole*, 935 F.3d at 453–54; *see also Poole*, 13 F.4th at 420. Here, Appellant plausibly alleged facts demonstrating Phillips lacked probable cause to believe Fischer posed a threat of serious physical harm either to Phillips or to others immediately prior to and at the time Phillips used deadly force. ROA.11-18. Further, Phillips failed to issue any warnings before using deadly force. ROA.17.

<u>The fact that Fischer was fleeing from police is not dispositive for the use of force analysis</u>. The Western District of Texas has explained:

> Even if a suspect flees by car, the Supreme Court has not "declare[d] open season on suspects fleeing in motor vehicles." *Lytle*, 560 F.3d at 414. **As the Supreme Court has recognized, federal appellate courts have repeatedly held it to be unreasonable to shoot "suspects who may have done little more than flee at relatively low speeds**." *Mullenix v. Luna*, 136 S.Ct. 305, 312 (2015) (citing *Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011); *Kirby*, 530 F.3d at 479–80; *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007); and *Vaughan v. Cox*, 343 F.3d 1323, 1330–31, and n.7 (11th Cir. 2003)).

*Smith v. City of Killeen, Texas*, No. 6:16-CV-323-RP-JCM, 2018 WL 1199949, at *6 (W.D. Tex. Mar. 8, 2018) (Emphasis added).

*Smith* concerned a suspect that was shot by a police officer while fleeing a traffic stop. *Smith*, No. 6:16-CV-323-RP-JCM, 2018 WL 1199949, at *1. The pursuit culminated with the suspect and an officer arriving at a cul-de-sac, the officer getting out his car and approaching the suspect, and the officer firing multiple rounds into the suspect's car. *Id*. The officer claimed he shot the suspect's car because it was driving towards him and the suspect's flight put him and the public at risk while the suspect claimed the officer moved into the path of his car while shooting him. *Id*.

The court noted that there was "evidence mitigating the dangerousness of [the suspect] Smith's flight." *Id*. at *6. Specifically:

> Smith states that he "did not run any red lights" and "did not greatly or unsafely exceed the speed limit" during the chase. (Smith Decl., Dkt. 19–1, at 2). Smith does, at times, appear to obey traffic laws. (Emeana Video, Ex. D–1, Dkt. 17, at 1:20–10:24). Smith did not collide with any cars or other objects and avoided colliding with Emeana's car. (Id.).

*Id*. The court further stated:

> Viewing the evidence in the light most favorable to Smith and drawing reasonable inferences in his favor, a **reasonable jury could find that he led police on a ten-minute low-speed chase in the middle of the night and drove around Emeana to continue fleeing when he was shot**. Under those facts, Emeana would have used deadly force to seize a suspect who had done "little more than flee at relatively low speeds**,"** *Mullenix*, 136 S. Ct. at 312, which (as the Supreme Court has recognized) federal courts of appeal have repeatedly held is not a

> justification that entitles the officer to qualified immunity. These decisions suffice to give Emeana notice that using deadly force in such circumstances is unreasonable.

*Id.* at *8. Emphasis added.

As discussed supra, Appellant sufficiently pleaded Fischer fled at low speeds and he did not put the public and officers at extreme risk during the pursuit: this is corroborated by still shots from video footage included in the Original Complaint and reference to radio transmission to dispatch that "He's stopping at all stop signs, going about twenty miles per hour." ROA.11-17.

Assuming *arguendo* that a fact finder determines Phillips was in the pathway of Fischer's vehicle, the use of deadly force cannot be justified by the threat of an oncoming vehicle <u>if Phillips unreasonably created the threat justifying his use of force by moving into the vehicle's path</u>. The court in *Smith* explained:

> **The Fifth Circuit and other federal courts of appeal have held that an officer's use of force cannot be justified by the threat of an oncoming vehicle when the officer moves into a vehicle's path**. *Edmond v. City of New Orleans*, 20 F.3d 1170, 1170 (5th Cir. 1994) (precedential under 5th Cir. R. 47.5.3) (holding that "[s]ummary judgment is properly denied" when "fact issues existed about whether a police officer's use of force was justified or was unreasonably created when he stepped in front of a moving car.") (citation omitted); *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) (affirming the denial of summary judgment where some evidence suggested that the officer placed himself in danger by moving toward the plaintiff's car and stating that "[w]here a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Estate of Starks v. Enyart*, 5 F.3d 230, 233–35 (7th Cir. 1993) (rejecting a district court's grant of summary judgment where a fact dispute existed as to whether the officer stepped in front of the decedent's car before

> shooting him). Should a jury find that (a) Emeana was not in the path of Smith's car before he fired and that (b) a reasonable officer in Emeana's position would not have felt threatened by Smith's car until he placed himself in the car's path, it could find that Emeana's use of force was unreasonable or excessive. The evidence is sufficient to permit a jury to make that determination.

*Smith*, No. 6:16-CV-323-RP-JCM, 2018 WL 1199949, at *5. Emphasis added.

Here Phillips was aware of the slow speed nature of the pursuit as he was involved in the pursuit the entire time. ROA. 10-18. He knew that Fischer had driven into a cul-de-sac and was attempting to turn around, leaving only the entry road as an exit. ROA.14. Despite this, Phillips exited his vehicle and stood between Fischer's vehicle and the exit. ROA.14. Accordingly, any danger Phillips argues he felt was created by his own actions of moving into the vehicle's path and cannot justify his use of deadly force. *Smith*, No. 6:16-CV-323-RP-JCM, 2018 WL 1199949, at *5; *Edmond*, 20 F.3d at 1170.

This Court denied summary judgment in *Edmond* when there were fact issues about whether a suspect was aiming his car at officers when he tried to get around an unmarked police car during a traffic stop and whether the suspect even hit the officer. *Edmond*, 20 F.3d 1170. This Court found the cases raised factual disputes similar to the Seventh Circuit case *Estate of Starks v. Enyart*, where fact issues existed about whether a police officer's use of force was justified or was "unreasonably created" when he stepped in front of a moving car. *Id*. *Edmond* makes clear that factual disputes over whether an officer unreasonably created the danger

by stepping in front of a moving vehicle precludes denial of summary judgment. Here, the district court erred in granting the motion to dismiss because Appellant plausibly alleged facts that, taken as true, raise factual disputes regarding whether Phillips "unreasonably created" the danger that allegedly justified his use of deadly force. *Id*.

Further, the Supreme Court has instructed courts to consider both the moment of threat and the circumstances leading up to it. *Barnes v. Felix*, 605 U.S. 73, 80 (2025) ("To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment."). According to the Court:

> Taking account of that context may benefit either party in an excessive-force case Prior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening." "**Or instead, they may show why such an officer would have perceived the same conduct as innocuous**." The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force.

*Barnes*, 605 US. at 80. Emphasis added.

The Supreme Court discussed *Plumhoff* to illustrate how the events unfolding in a dangerous police chase could make a later use of force reasonable. *Id*. at 81 citing *Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) (a fatal shooting occurred after an "outrageously reckless" police chase where the driver was spinning his wheels after exceeding 100 miles per hour and running into

a police cruiser)). Here, this Court should consider Fischer's conduct during the pursuit when examining whether he posed a threat of serious physical harm to Appellee Phillips or any other person. Appellant has plausibly alleged that Fischer did not pose such a threat as he drove slowly under the speed limit, obeyed stop signs, and a red light, drove in the proper lane of travel, and did not strike any vehicles or cause any collisions. ROA.10-19.

Cases relied on in the District Court by Phillips are distinguishable because there was no real dispute about the danger suspects posed to police. *Fraire v. City of Arlington*, 957 F.2d 1268, 1275 (5th Cir. 1992); *Brosseau v. Haugen*, 543 U.S. 194 (2004); *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007); *Molina v. Brady*, No. 4:24-CV-00593-O, 2025 WL 1019078, at *3 (N.D. Tex. Apr. 4, 2025). In *Hathaway*, the suspect suddenly accelerated towards an officer turning first to the right, then back to the left, and then finally back towards the center of the roadway as the officer attempted to get out of the way. *Hathaway*, 507 F.3d at 316. When the officer realized he was not going to be able to get out of vehicle's path he decided to fire his weapon. *Id*.

The suspect's vehicle struck him on the leg, causing him to spin down the side of the vehicle. *Id*. The officer testified in his deposition that he saw the vehicle "accelerate towards him" and the driver had a "determined look." *Id*. at 321. Further, the court noted "the subsequent sequence of events, in which he realized he could

not get out of the way, decided to fire, unholstered his gun, was struck, and fired his weapon, occurred in the snap of a finger, so quickly, in fact, that [the officer] Bazany [couldn't] remember whether he fired his gun before, during, or after he was struck." *Id*. 321-322.

Thus, the court determined, the "only remaining question, then, is whether an officer would be justified in firing his weapon when threatened by a nearby accelerating vehicle, even if, owing to the limited time available to respond, the shot was fired when or immediately after the officer was hit." *Id*. at 322. In contrast, here, still shots taken from Phillips' body camera and another officers' dash camera footage show Fischer driving slowly (about five miles per hour) staying to the side of Phillips. ROA 15-16. At no time did Fischer rev his engine, accelerate his vehicle, or turn his steering wheel toward Phillips or any other person and photographs of the bullet holes in Fischer's windshield show Phillips' shots came from the side where Phillips was standing at the time of the shooting, rather than from directly in front of Fischer's vehicle. ROA.16-17

In *Fraire* the suspect "drove straight [at the officer] Lowery showing no sign of attempting to stop or drive around him." *Fraire*, 957 F.2d at 1275. Moreover, in "attempting to flee, [the suspect] Fraire drove recklessly at a high speed into and around a residential neighborhood on a Sunday afternoon" and "attempted to run Lowery down." *Id*. This was confirmed by eye-witness accounts. *Id*. The facts in

*Fraire* are distinguishable from the facts alleged here, as Plaintiff pleaded Fischer did not drive recklessly or dangerously and Fischer was driving slowly to the side and away from Phillips when Phillips fired his weapon. ROA.10-18; *Cf. Edmond*, 20 F.3d 1170(noting in *Fraire* there was no real dispute about the danger the plaintiffs posed to police.)).

In *Brosseau*, a suspect was shot as he attempted to flee in a vehicle he had entered after leading officers on a foot pursuit through a residential neighborhood. 543, U.S. at 195-196. Before the shooting the suspect ignored commands to exit the vehicle: in an attempt to stop him from escaping the officer shattered the vehicle's window after striking it several times with her handgun and struck the suspect on the head with the barrel and butt of her gun. *Id*. Still, the suspect undeterred was able to start the vehicle. *Id*.

As the vehicle started or shortly after it began to move the officer jumped back and to the left. *Id*. The officer fired one shot through the rear driver's side window at a forward angle, hitting the suspect in the back. *Id*. at 196-97. The Supreme Court noted that the suspect "posed a major threat to among others, the officers at the end of the street." *Brosseau*, 543 U.S. at 200.

In contrast here, Appellant pleaded Fischer did not pose a threat of serious physical harm to any officer or other person immediately prior to and at the time Phillips shot him, as Fischer was driving roughly five miles per hour, was not driving

at Phillips or any other person, but instead was attempting to drive slowly around and to the side of Phillips, and there were no civilians present or in harm's way. ROA.10-18.

In *Molina*, the suspect threatened to break into his family's home with a gun and led police on a chase that was serious enough to involve several officers and a blockade. *Molina*, No. 4:24-CV-00593-O, 2025 WL 1019078, at *3. Regarding whether the suspect posed an immediate threat to the safety of the officers or others, the court found it material that the suspect was armed. *Id*. at *4. The court distinguished *Lytle* on this basis:

> Although the fact of the receding vehicle weighed heavily in the Court's analysis, there are no facts in Lytle that the suspect was carrying a gun. By contrast, here, Defendants knew that Alejandro, while armed with a gun, had just attempted to break into his family's home and then escaped in his vehicle. So, they had reason to perceive a "continuing threat" of harm even after the vehicle chase ended.

*Molina v. Brady*, No. 4:24-CV-00593-O, 2025 WL 1019078, at *6 (N.D. Tex. Apr. 4, 2025). By contrast here, at no point did Fischer threaten any person either verbally or physically, at no point did Fischer brandish a weapon or state he had a weapon, and no weapon was found on Fischer after the shooting. ROA.15.

"[I]n an obvious case general standards 'can clearly establish' the answer, even without a body of relevant case law." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021)(citing *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); *see also Darden v. City of Fort Worth, Texas*, 880 F.3d 722,

733 (5th Cir. 2018) ("[I]n an obvious case, the Graham excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law.")). General statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," *Hope v. Pelzer* 536 U.S. 739, 741 (2002). The Supreme Court has explained that in an "obvious case," the unlawfulness of conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Hope*, 536 U.S. at 738(noting in a case where the Eighth Amendment violation was "obvious" that there need not be a materially similar case for the right to be clearly established)).

Further, this Court has explained, "[i]n *Garner*, the Supreme Court held that '[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead.'" *Roque*, 993 F.3d 335 (citing *Garner*, 471 U.S. at 11-12)). "Although the officer in Garner shot and killed a fleeing burglary suspect who was never armed [the Fifth Circuit] has applied Garner to situations where a suspect has a weapon but is incapacitated or otherwise incapable of using it (functionally unarmed)." *Id*. (citing *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015)).

Here, this is an obvious case. *Hope*, 536 U.S. at 738; *Garner*, 471 U.S. at 11; *Lytle*, 560 F.3d at 417-18. At the time Phillips shot Fischer, the law was clear that it is unreasonable for a police officer to use deadly force by way of a gun against a fleeing felon in a vehicle who does not pose a sufficient threat of harm to the officer or others. *Lytle*, 560 F.3d at 417; *Garner*, 471 U.S. at 11. Additionally, the law was clear deadly force is unreasonable the officer does not have " 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others,' "*Aguirre*, 995 F.3d at 412-13; citing *Gutierrez*, 139 F.3d at 446; quoting *Garner*, 471 U.S. at 11.

It is obvious here, that the use of deadly force by shooting Fischer would be a constitutional violation under the Fourth Amendment when Fischer was not a threat because (1) his vehicle was only moving approximately 5 miles per hour, (2) his car was not moving in the direction of Phillips, (3) Phillips was not in the pathway of Fischer's vehicle, (4) Fischer had been driving in a cautious and safe manner, well under the speed limit, while avoiding damage and stopping at stop signs and a stop light until it turned green, and (5) Fischer had not threatened anyone or brandished a weapon. ROA.10-18. *Aguirre*, 995 F.3d at 412-13; citing *Gutierrez*, 139 F.3d at 446; quoting *Garner*, 471 U.S. at 11; see also *Amador v. Vasquez*, 961 F.3d 721, 730 (5th Cir. 2020); *Lytl*e, 560 F.3d at 417-18.

Accordingly, the District Court erred in concluding that Phillips was entitled to qualified immunity because it was clearly established that his conduct violated the Fourth Amendment. *Garner*, 471 U.S. at 11; *Aguirre*, 995 F.3d at 412-13; *Gutierrez*, 139 F.3d at 446; *Lytle*, 560 F.3d at 417-18; *Amador*, 995 F.3d at 730; *Smith*, No. 6:16-CV-323-RP-JCM, 2018 WL 1199949, at *5; *Edmond*, 20 F.3d at 1170.

**G. The Wrongful Death and Survival Action should not be dismissed as Appellant has stated a claim for relief under the Fourth Amendment**

Appellant's wrongful death and survival actions should not be disposed of since Appellant states a violation of the Fourth Amendment pursuant to 42 U.S.C §1983 as discussed, supra., which resulted in the death of her son, Jesse Fischer. The wrongful death and survival actions are merely theories of recovery dependent on the excessive force claim.

## CONCLUSION & PRAYER

Appellant asks this Court to find the district court erred in granting Appellee Phillips' motion to dismiss; find that Appellant sufficiently pleaded Phillips violated Fischer's constitutional rights and is not entitled to qualified immunity; vacate the district court's judgement; and reverse and remand this case for further proceedings. Appellant asks for any other relief to which she may be justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
James P. Roberts
SBOT:24105721

Breanta Boss
SBOT:24115768
**Palmer Perlstein**
15455 Dallas Parkway, Suite 540
Dallas, Texas 75001
Phone: (214) 2987-4100
Email: breanta@palmerperlstein.com
james@palmerperlstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, that an exact copy of Appellant's Brief was served via ECF to counsel for the Defendants-Appellees. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1.

*/s/ James P. Roberts*
**JAMES P. ROBERTS**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 32(a)(7)(B) because:

- This brief contains 6,827 words with the exclusions under Rule 32(f) accounted for;

  This brief also complies with the typeface requirements of Rule 32(a)(5) and the type requirements of Rule 32(a)(6) because:

- This brief has been prepared in Times New Roman font, a proportionally-spaced typeface, using Microsoft Word 2010 with 14-point font for the text and 12-point font for the footnotes.

*/s/ James P. Roberts*
**JAMES P. ROBERTS**